24 So.2d 765

## STEED v. BAILEY.

### 7 Div. 780.

Supreme Court of Alabama.

Jan. 31, 1946.

A. L. Crumpton, of Ashland, for appellant.

W. C. Dempsey, of Ashland, for appellee.

PER CURIAM.

This cause originated in a suit by Jeff Steed against Sallie Bailey in the Justice Court in Lineville, Alabama, in which Steed sought to recover possession of the lands involved, as landlord, from Sallie Bailey, as tenant under written contract of lease.

The cause was appealed to the circuit court and on the trial the judge ruled there was an equitable question involved concerning the execution of the lease contract, and transferred the cause to the equity side of the docket.

In restating her pleading Sallie Bailey filed her bill and averred that Jeff Steed executed a mortgage to Pruet and Glass on an undivided one-half interest in the property involved to secure an indebtedness to said firm, and said mortgagee foreclosed said mortgage after its due date, purchasing said land at foreclosure sale, as they were authorized to do. That Jeff Steed, being unable to pay the same, approached Sallie Bailey to loan him the money to redeem the same, which she agreed to do, and in confirmation of such agreement Pruet & Glass executed to Sallie Bailey a deed to an undivided one-half interest in said land and other lands, which said deed is set out in full as an exhibit. That at the same time and as a part of the same transaction Sallie Bailey and Jeff Steed entered into a contract by which Steed was to pay Sallie Bailey the money she had paid, plus in-

408

terest, to recover said property, which agreement is set out in full in the transcript and prayed that the rental contract referred to be declared null and void.

For answer Jeff Steed averred that the transaction by which the deed was executed to Sallie Bailey from Pruet & Glass, and the contract between Sallie Bailey and himself constituted security for a loan, and was in effect a mortgage. That as such contract was executed the said Bailey took possession of said property by agreement with Steed, under the terms of which the rents were to be applied on the indebtedness, which was done. That on the 14th of December, 1938, the rents had paid off a part of the indebtedness. That then the said Steed and Bailey entered into a written contract by which she was to pay him $18 rent for the next year's crop, which sum represented the full payment of the indebtedness. Said Steed prayed that the land be decreed to be his and not hers, as he had fully paid the indebtedness, Sallie Bailey owing him $18 more than the amount he owed.

It is insisted by appellant that the issue is a question of the legal principles involved. That the two transactions together amounted to a mortgage or instrument to pay the debt; that Sallie Bailey went into possession of the property, lived on it and received rents. That Steed paid the taxes on the property, made payments to the Federal Land Bank on a first mortgage on the land, and in 1938, when she and he agreed that the rents up to that time had practically paid the debt to Sallie Bailey. That for the year in question the rents were overpaid $18, and that the parties signed a written contract as landlord and tenant by which Sallie Bailey was to pay him $18 rent in excess of the amount that he owed to pay off the indebtedness.

It is averred by appellee in her restated pleading that, there was a mortgage to the Federal Land Bank on said lands executed by Jeff Steed and his brother A. Steed. That on or about the 14th day of December, 1938, Jeff Steed, by fraud, deception and deceit, induced her to enter into a contract purporting to be for payment of the loan to the Federal Land Bank, but which was, in fact, a rental contract, of which she was ignorant, being unlearned, alleging Jeff Steed as landlord and Sallie Bailey as tenant of said lands; said alleged contract is set out as an exhibit. Appellee prayed that said alleged contract be cancelled and

removed as a cloud on her title to this land for and on account of the fraud practiced by the said Jeff Steed in obtaining her signature to the same.

It is apparent from the pleadings that the two theories advanced for determination of this cause are: (1) That the deed and contract amount to an equitable mortgage. (2) That the transactions amounted to a sale of the lands from Pruet & Glass to appellee and the subsequent agreement or contemporaneous agreement entered into between appellant and appellee on the same date of execution of said deed is in fact a conditional sale of said lands from appellee to appellant, according to the conditions of said agreement for redemption, in which appellant was given until November 15, 1937, to pay the agreed purchase price of $127.20. Further, that said purported rental contract is void on account of having been fraudulently obtained, or that said appellee was fradulently induced to enter into said alleged agreement or contract.

The testimony was heard by the court ore tenus. It is in sharp conflict. However, it is agreed that Jeff Steed executed the mortgage to John J. Pruet and C. O. Glass. That said mortgage was foreclosed, bought by Pruet and Glass, a deed executed by Pruet and Glass to Sallie Bailey and that the two contracts in evidence were executed. The evidence of appellee and of her witnesses is conclusive to the fact that Jeff Steed induced appellee to buy this land from Pruet & Glass after foreclosure and to enter into the contract giving him one year to purchase the land from her, after which he was to have no further right to purchase said lands. Appellee's testimony as to the execution of the alleged contract of December 14, 1938, is to the effect that Jeff Steed induced her to sign something or some papers to get money to pay the Federal Land Bank the amounts then due on its mortgage to prevent her from losing the land and that she knew nothing of any purpose or intention on her part to sign any contract as tenant of Steed.

The testimony of G. D. Owen, Supervisor of the Farm Security Administration, through whom the alleged contract or loan was made, shows that he had no recollection of the fact of Steed being the landlord and Sallie Bailey the tenant, or that this was discussed at the time the contract was made. It is evident from this testimony that these parties came to his office, signed a contract form, after they had had some

kind of conversation relative to the contract, which Sallie Bailey says was only a contract to get some money to pay the Federal Land Bank on its mortgage.

The testimony of Sallie Bailey is to the effect that there was no agreement for her to pay rent for the property, which rents were to be applied on the purchase price of $127.20 until same had been retired. In support of the contention of Sallie Bailey that she was led to believe that the transaction with the Farm Security Administration was a loan to her, she testified on cross examination that she had borrowed money from the Farm Security Administration before that time.

The testimony of appellant Steed is to the effect that he borrowed the money from Sallie Bailey to pay off his indebtedness to Pruet & Glass. That the method of handling the transaction was that Sallie Bailey got a deed from Pruet & Glass and he and Sallie Bailey entered into the written contract executed contemporaneously with the deed, but that the rents Sallie Bailey was to pay for the land was to be applied on the indebtedness until it was all paid. That enough rents accrued to pay same and the indebtedness was thus retired with a balance over to him. Nowhere in the testimony is he corroborated or is his testimony substantiated in this respect.

Two sisters of appellant attempted to give testimony substantiating his theory of the transaction, but neither of them knew anything about the trade while it was being made and only attempted to testify as to what happened a long time thereafter.

 The decree of the trial court before whom testimony is given ore tenus and who had opportunity of seeing and hearing the witnesses has the same force and effect as a verdict of a jury. Schefano v. State, 231 Ala. 391, 164 So. 902; Farmer v. Coleman, 231 Ala. 527, 165 So. 778; Rogers v. McLeskey, 225 Ala. 148, 142 So. 526.

In Anderson v. Lewter, 232 Ala. 375, 376 and 377, 168 So. 171, 172, it is said:

"The testimony was taken orally before the trial court, sitting without a jury. He denied complainant relief. His findings, for reasons ofttimes stated, are to be accorded the same presumptions as the verdict of a jury.

"We have carefully considered the evidence, its several tendencies, and reasonable inferences. A detailed recital or discussion would serve no good purpose.

"Applying the rule of review in such cases, we conclude the finding of the trial judge should not be disturbed."

 This has application to the facts of the instant case. We have considered the pleading and evidence before the court without the intervention of a jury, given ore tenus, and are of the opinion that we cannot disturb the decree rendered, which has the force and effect of a jury decision.

The foregoing opinion was prepared by Mr. Justice Thomas, now deceased, and upon consideration of the cause is adopted as the opinion of the court. Accordingly, the decree of the lower court is affirmed.

Affirmed.

GARDNER, C. J., and FOSTER, LAWSON, and STAKELY, JJ., concur.