BRYAN, Judge.
Charles Lance Paulk (“the husband”) appeals from a judgment entered by the Winston Circuit Court (“the trial court”) that divorced him from Vickie Gail Paulk (“the wife”). For the reasons set forth herein, we remand the cause with instructions to the trial court to clarify its judgment.
The wife filed a complaint for a divorce on January 9, 2009. In her complaint, she alleged that the parties had married on April 15, 2006, and that they had separated on December 6, 2008. The husband subsequently filed an answer to the wife’s complaint and a counterclaim for a divorce. There were no children born during the parties’ marriage, and the parties sought only a division of their property and debts. The trial court conducted an ore tenus hearing on June 24, 2010, but the transcript of that proceeding abruptly ends during the direct examination of the wife by her attorney after a discussion was held off the record. No other testimony was presented at an ore tenus hearing. On August 3, 2010, the wife filed a written summary of her testimony with the trial court, and, on October 7, 2010, the husband filed a written summary of his testimony with the trial court.
On October 26, 2010, the trial court entered a judgment divorcing the parties and dividing their real and personal property. Pursuant to that judgment, each party was awarded any real property that that party owned before the marriage and each party was assigned any indebtedness on the property that party was awarded. The husband was awarded all personal property that he owned before the parties married, and he was assigned responsibility for any indebtedness on that property. The wife was awarded the real property described as “the farm,” and all personal property located thereon. The wife was assigned any outstanding indebtedness on the farm, and both parties were assigned responsibility for any other debts in their names.
The husband filed a motion to alter, amend, or vacate the trial court’s judgment pursuant to Rule 59, Ala. R. Civ. P. The husband raised issues about certain items of personal property that were located at the farm, and he argued that the trial court had erred by failing to award him any interest in the farm. The trial court denied the husband’s postjudgment motion, and the husband timely appealed.
On appeal, the husband first argues that the trial court erred by restricting his ability to present ore tenus testimony.[1] The husband specifically contends that the trial court erred by restricting his right to cross-examine the wife and by restricting his right to present evidence in support of his claim. In her brief on appeal, the wife argues that this court cannot consider these arguments because the husband failed to raise any objection before the *756 trial court regarding how the proceedings below were conducted. Indeed, our review of the record reveals that the husband failed to raise the arguments he now presents on appeal. It is well settled that this court cannot consider an argument that is raised for the first time on appeal. See Lewis v. Lewis, 958 So.2d 896, 899 (Ala.Civ.App.2006) (holding that the mother did not preserve for appellate review her argument that the trial court had erred by limiting the testimony she presented during trial because she did not object to the time limitation or request additional time in which to complete presentation of her evidence); and Davis v. Southland Corp., 465 So.2d 397, 402 (Ala.1985) (“Timely objection is a condition precedent to raising an error on appeal.”). Accordingly, we cannot consider these arguments on appeal.
Next, the husband argues that the trial court’s division of property was inequitable because it failed to award him any interest in the real property known as “the farm.” Before we begin our discussion of this issue, however, we must first determine our standard of review of the trial court’s judgment in light of the fact that the record indicates that the only ore tenus testimony presented to the trial court was a partial direct examination of the wife; the remainder of the evidence that was presented to the trial court was in the form of exhibits and written “testimony.”
This court was faced with a similar situation in Hospital Corp. of America v. Springhill Hospitals, Inc., 472 So.2d 1059, 1060-61 (AIa.Civ.App.1985). In that case, the trial court heard live testimony from one witness called by the plaintiffs; the plaintiffs did not finish their examination of that witness, and the defendants were not given an opportunity to cross-examine the witness. Id. at 1060. The case was then submitted on briefs, depositions, and exhibits filed with the trial court. Id. In discussing what standard of review should apply to the trial court’s judgment, we stated:
“We are aware of the cases holding that when the evidence is taken ore tenus before the trial court, or partly so, on review we grant the trial court a presumption of correctness. See, e.g., Jones v. Moore [295 Ala. 31], 322 So.2d 682 (Ala.1975); Air Movers of America, Inc. v. State National Bank, 293 Ala. 312, 302 So.2d 517 (1974); State v. Frazier, 222 Ala. 180, 131 So. 442 (1930); Penn v. Penn, 437 So.2d 1053 (Ala.Civ.App.1983); Nero v. Moore-Handley, Inc., 370 So.2d 1043 (Ala.Civ.App.1979). However, in each of these cases at least one witness was examined and cross examined orally before the trial court.
“The rationale behind the ore tenus rule has historically been that the trial court deserves a presumption of correctness when it is in a position to actually see and hear the testimony, observing firsthand the demeanor of the witnesses. Christian v. Reed, 265 Ala. 533, 92 So.2d 881 (1957); Steed v. Bailey, 247 Ala. 407, 24 So.2d 765 (1946); Barran v. Barran, 431 So.2d 1278 (Ala.Civ.App.1983).
Considering that the trial court heard only part of the testimony of one witness, including only a partial direct examination and no cross examination, and that the case was otherwise tried exclusively on the basis of numerous depositions and exhibits, we hold that the ore tenus rule does not apply. Consequently, no presumption of correctness will be accorded the trial court’s findings on the evidence, and this court will sit in judgment on the evidence as if it had been presented de novo. Smith v. Dalrymple, 275 Ala. 529, 156 So.2d 622 (1963); Lepeska Leasing Corp. v. State Department of Revenue, 395 So.2d 82 (Ala.Civ. *757 App. [1980) ], writ denied, 395 So.2d 85 (Ala.1981).”
Id. at 1060-61.
Accordingly, we will not apply the presumption of correctness that would usually accompany the trial court’s findings of fact that support its judgment dividing the parties’ marital property, see, e.g., Long v. Long, 824 So.2d 778, 781 (Ala.Civ.App.2001), because the divorce judgment in the present case was not based on ore tenus testimony. As we did in Hospital Corp. of America, supra, we will review the trial court’s judgment de novo.
The record indicates that the wife owned a home on a lake free of any mortgage indebtedness before the parties married and that the husband owned a home, a rental house and lot, and a vacant lot before the parties married. The record indicates, however, that the husband sold his home during the parties’ marriage. After the parties married, they purchased certain property referred to as “the farm.” The record indicates that the farm was, at one time, divided into three parcels consisting of approximately seven acres each. The wife indicated that she had inherited one seven-acre parcel, but she also testified that she paid her mother $15,000 for the buildings located on the parcel that she had inherited. The parties purchased the other two seven-acre parcels from the wife’s siblings for $21,000 each, for a total of $42,000. The parties agree that the husband paid the wife’s siblings $42,000 for their seven-acre parcels; the record indicates that the husband used an equity line of credit from one of the properties that he owned to finance that purchase. The parties subsequently executed a mortgage in the amount of $91,500, using the wife’s lake house as collateral for the loan. Using that money, the wife repaid the husband $42,000 for the parcels that he had purchased from her siblings, she paid $15,000 to her mother (discussed above), and she paid off the loan for her vehicle (approximately $25,000). The remainder of the money was deposited into a joint account held by the parties.
The parties began constructing a home on the farm property in the fall of 2007, and both parties presented evidence of monetary and nonmonetary contributions they had made toward the payment of the mortgage indebtedness related to the farm property or toward improvements to the farm property. The record indicates that the house on the farm property remained unfinished at the time of trial.
On appeal, the husband argues that the trial court erred in failing to award him any interest in the farm in light of the fact that the evidence indicated that he had made a substantial monetary contribution toward the construction of the house on the farm property.
The wife argues that she was the “sole equitable owner” of the farm because it was part of her inheritance and because she had repaid the husband the $42,000 that he had contributed toward the purchase price of the farm property. Furthermore, although she acknowledges that the husband made financial contributions toward the construction of the house on the farm property, she contends that she had made monetary and nonmonetary contributions toward the improvement of the husband’s rental property and that, because she was not awarded any interest in that property, the trial court did not exceed its discretion by failing to award the husband any interest in the farm.
The wife’s argument that the judgment is equitable in light of the fact that she was not awarded any interest in the husband’s rental property indicates that the wife is operating under the assumption that the *758 husband’s rental property was divisible as a marital asset. However, the trial court’s judgment does not indicate whether it considered the husband’s rental property to be part of the marital estate or part of the husband’s separate estate. Likewise, the trial court’s judgment does not specifically address whether it considered the lake house or the farm to be part of the wife’s separate estate or divisible as marital property. As stated above, the wife was awarded the lake house, and she was ordered to be responsible for the remaining mortgage indebtedness on that property. The wife was also awarded the farm, which was valued between $155,000 and $200,000. The husband was awarded the rental house and the vacant lot that he owned before the parties married, but there is no value assigned to those properties in the record.
The husband’s primary contention on appeal is that he should have been awarded some interest in the farm because the record indicated that he had used the sales proceeds from the home he owned before the parties married toward the construction of the house on the farm property. However, he also argues that the trial court erred because it awarded the wife “any and all personal property located” at the farm. The record indicates that personal property that the husband owned before the parties married was located at the farm at the time the divorce judgment was entered, and the record indicates that he valued that property at approximately $11,000. The husband also indicated that he had owned personal property before the marriage that he valued at $21,500; however, the record indicates that some of that property was located at the farm, and it is unclear whether the trial court considered that property to be jointly owned by the parties or to be part of the husband’s separate estate. Because the trial court awarded the wife all personal property located at the farm, but also awarded the husband all personal property that he had owned before the parties married, we cannot determine which party the trial court intended to award the personal property that the husband owned before the marriage that was located at the farm. Because such a determination affects the analysis of whether the division of property was equitable, we remand the cause with instructions to the trial to clarify its division of personal property. Furthermore, because we are remanding the cause on the ground set forth above, and because we are unable to determine what property was included in the marital estate, we further instruct the trial court, on remand, to specifically set forth the property that it included in the marital estate and the property that it determined to be part of either party’s separate estate. The trial court shall make a return to this court containing the above-mentioned findings within 28 days.
The wife’s request for an attorney’s fee on appeal is denied.
REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

On Return to Remand

BRYAN, Judge.
The Winston Circuit Court (“the trial court”) has entered an order as required by our instructions in this court’s opinion in this case on original submission. See Paulk v. Paulk, 97 So.3d 753 (Ala.Civ.App.2012). The trial court’s order on remand states: (1) that the rental property owned by Charles Lance Paulk (“the husband”) was treated as the husband’s separate property and was not included in the marital estate; (2) that the lake house owned *759 by Vickie Gail Paulk (“the wife”) was treated as the wife’s separate property and was not included in the marital estate; (3) that the real property described as “the farm” was treated as the wife’s separate property and was not included in the marital estate; (4) that the trial court’s intention was to award the husband all personal property listed in exhibits 1 and 1(a) in his brief to the trial court, regardless of where the personal property was located; and (5) that it was the intention of the trial court to award the wife all other personal property that was not listed on the husband’s exhibits that was located at the farm.
This court gave both parties the opportunity to file a supplemental brief in light of the specific findings of fact made by the trial court. In his supplemental brief to this court, the husband argues that the trial court erred by concluding that the farm was part of the wife’s separate estate in light of the evidence indicating that the farm was accumulated by the parties during their marriage and that he had made financial and nonfinancial contributions to the improvement of the farm. In response, the wife argues, as she did in her original brief, that she is the sole equitable owner of the farm because it was part of her inheritance and the husband lived at the farm only for a short time.
In order to address the husband’s primary contention on appeal, i.e., that the division of property is inequitable, a more thorough recitation of the facts found in the record on appeal is needed. At the time of trial in 2010, the husband was approximately 57 years old, but the wife’s age is unclear from the record. The wife was an elementary-school teacher earning approximately $2,600 a month. The husband retired from the Florence Utility Department in September 2008; his salary at that time was $40,000 a year. The record indicates that the husband was injured in October 2007 and that the Social Security Administration determined that the husband met the medical requirements to obtain disability benefits as of November 28, 2007. He was awarded a lump sum of $9,351, and he began receiving $2,078 a month in disability benefits effective November 2008. The husband and the wife lived in separate towns for a significant portion of their marriage, but the husband contended that he visited the wife at the farm every weekend. According to the wife, the husband moved to the farm in mid-2008 and they lived together at the farm for approximately eight months out of their two-and-one-half-year marriage. However, the husband stated that he remained at the farm after November 2007 and moved away from the farm on December 5, 2008, when the parties separated. We note that the parties agreed that misconduct of the parties was not a factor for the trial court to consider in dissolving the marriage or in making a division of property.
As we stated in our opinion on original submission, the parties took out a mortgage in the amount $91,500, using the wife’s lake house as collateral, in order to finance the purchase of the farm.[1] After the wife repaid the husband $42,000, paid her mother $15,000, and paid off her automobile loan in full (approximately $25,000), the remaining funds from the mortgage were placed into an account held jointly by *760 the parties.[2] The wife used that account to pay the mortgage debt in January and February 2007. The parties separated in February 2007, and the wife closed the joint account. At that time, she began making the mortgage payments from a separate account in her name. The parties reconciled in December 2007, and the parties opened another joint account. The record indicates that the husband and the wife deposited their paychecks into their joint account, when one existed, and that the husband also deposited several large lump-sum payments into the parties’ joint account. The mortgage payments were made from the joint account from December 2007 through November 2008. The parties separated again in December 2008, and, from that time forward, the wife made every mortgage payment from a separate account. The record indicates that the mortgage debt had been reduced by approximately $30,000 as of July 2010, leaving a mortgage indebtedness of $61,500. According to the wife, only 12 mortgage payments totaling $9,265.56 had been paid from the parties’ joint account.
The husband presented evidence indicating that he had contributed approximately $90,000 “to the parties’ financial situation” from the sale of his home, from annuity payments, from insurance proceeds, from Social Security disability payments, and from payments for unused leave time that he had accumulated while working for the Florence Utility Department. However, he also indicated that he had “recovered” $16,851 of the money he had contributed, presumably after the parties separated. The record indicates that the husband had contributed several lump-sum amounts in excess of $16,851 in the two months before the parties separated.
The wife also testified that the parties had paid for improvements to the husband’s rental property, had paid nine months of the monthly mortgage debt on the husband’s rental property, and had paid some utility and other expenses related to the husband’s rental property from a joint account while they were married.[3]
The record indicates that, during the marriage, the husband .sold the home he owned before the parties married and realized $54,000 in equity from the sale of that home. According to the husband, construction on the house at the farm was initiated in the fall of 2007 with a $22,000 contribution from the husband from the sale of the home he had owned before the parties married. The husband presented documents indicating that he had contributed an additional $40,600 from an account in his name only toward the construction of the house at the farm and that he had contributed labor toward the construction of the house at the farm valued at $12,000.
The wife presented bank records indicating that she had paid approximately $47,000 from her individual account for expenses related to the farm, including construction on the house and payments *761 toward the mortgage, and that she and her family had made significant improvements to the house, which was still unfinished at the time of trial, after the parties separated. While the parties resided together during their marriage and the house was being built, the parties lived at the farm in a barn that was on the property. The husband estimated that the farm was worth between $155,000 and $200,000; the wife did not give an estimate of the value of the farm.
We note that the standard of review applicable in this particular case is de novo and that the trial court’s findings of fact are not afforded a presumption of correctness. See Paulk v. Paulk, 97 So.3d at 757.[4] The husband contends that the division of property is inequitable because he was not awarded any interest in the farm. As we stated above, the trial court concluded that the farm was the wife’s separate property and, thus, not divisible as a marital asset. The husband has challenged that finding, but he does not challenge any other aspect of the trial court’s determination of what property was the separate property of the husband or the wife. See Green v. Wedowee Hosp., 584 So.2d 1309, 1311 n. 4 (Ala.1991) (“[A] par ty’s failure to argue an issue in brief to an appellate court is tantamount to a waiver of that issue on appeal and ... an appellate court will consider only those issues that have been properly delineated and will not search the record for errors that have not been raised before the appellate court.”). Accordingly, regarding the specific findings of fact made by the trial court, we will consider only whether the trial court erred by concluding that the farm was part of the wife’s separate estate.
“A party’s ‘“separate estate” is that property over which [he or] she exercises exclusive control and from which the [spouse] ... derives no benefit by reason of the marital relationship.’ Gartman v. Gartman, 376 So.2d 711, 713 (Ala.Civ.App.1978). The separate estate of the parties in a divorce proceeding includes property owned prior to the marriage and property received by gift or inheritance during the marriage. § 30-2-51(a), Ala.Code 1975. Although marital property generally includes property purchased or otherwise accumulated by the parties during the marriage, it may also include the property acquired before the marriage or received by gift or inheritance during the marriage when it is used, or income from it is used, regularly for the common benefit of the parties during their marriage. See § 30-2-51(a), Ala.Code 1975.”
Nichols v. Nichols, 824 So.2d 797, 802 (Ala.Civ.App.2001).
The wife argues that the farm is her separate property because it was part of her inheritance. However, the record contains documents indicating that two of the three separate parcels of the farm were purchased from the wife’s siblings during the parties’ marriage and that those two parcels were conveyed to the husband and the wife jointly. The record also indicates that the third parcel of the farm was conveyed to the husband and the wife during their marriage by a deed from the wife’s mother. As we noted above, the wife repeatedly called the farm her inheritance. *762 However, the wife’s mother was present at the parties’ divorce trial. Thus, the seven-acre parcel the wife received from her mother as an “inheritance” was nothing more than an inter vivos gift from the wife’s mother to the husband and the wife. There is no evidence to support a conclusion that the wife had actually inherited any part of the farm.[5] Instead, the evidence indicates that the parties purchased two of the seven-acre parcels from the wife’s family members and that they jointly received the third seven-acre parcel as a gift.[6] It is undisputed that the husband and the wife obtained joint ownership of the farm during their marriage and that they lived at the farm together during their marriage, albeit for a relatively short amount of time. Thus, we conclude that the farm was. marital property because it was “purchased or otherwise accumulated by the parties during the marriage.” Nichols, 824 So.2d at 802. See Kaufman v. Kaufman, 934 So.2d 1073, 1080 (Ala.Civ.App.2005) (when the evidence indicated that certain assets were accumulated during the marriage, and there was no evidence indicating that one spouse had received those assets by gift or inheritance, then those assets were marital property subject to division).
We now consider whether the trial court’s division of property was equitable.
“A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. Parrish [v. Parrish], 617 So.2d [1036,] 1038 [ (Ala.Civ.App.1993) ]. In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages, health, and station in life; the length of the parties’ marriage; and the source, value, and type of marital property. Robinson v. Robinson, 795 So.2d 729, 734 (Ala.Civ.App.2001).”
Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009).
The wife was awarded the farm (valued at $155,000 to $200,000), and she was ordered to pay the remaining mortgage indebtedness associated with the farm ($61,-500). Accordingly, the wife was awarded between $93,500 and $138,500 in equity in the farm. She was also awarded all personal property at the farm that was not listed on exhibits 1 and 1(a) provided by the husband. The record indicates that this award included a tractor, valued by the husband at $4,050; a lawn mower, valued by the husband at $2,400; a wood stove that was purchased by the husband for $2,000; and kitchen furnishings that were valued by the husband at $600. The wife testified that the lawn mower no longer worked. Considering that testimony, we conclude that the wife was awarded personal property that had a value of $6,650. Therefore, the wife’s award of real and personal property totaled between $100,150 and $145,150.[7]
*763 On the other hand, the husband was awarded the personal property listed in exhibits 1 and 1(a) in the record, and he contends that that personal property was his separate property. In exhibit 1, which is labeled “Antique Personal Property Owned by [the Husband] Before the Marriage Still at [the] Marital Residence,” the husband lists several pieces of furniture that he valued at $11,290. In exhibit 1(a), which is labeled “Miscellaneous Items Owned Prior to the Marriage by [the Husband],” the husband lists multiple items of personal property that he valued at $21,685. With one exception, discussed infra, there is no indication that any of the property listed in those two exhibits was used regularly for the common benefit of the parties during the marriage, and it is undisputed that the property listed in those two exhibits was owned by the husband before the parties married. Accordingly, we conclude that, with one exception, discussed infra, the property awarded to the husband in exhibits 1 and 1(a) is his separate property and should not be considered in determining whether an equitable division of property was made.
The one exception, noted above, is a single listing in exhibit 1(a) described as a washer, a dryer, and a refrigerator with a cumulative value of $1,000. According to the husband, the wife was using those appliances. Therefore, we conclude that the washer, the dryer, and the refrigerator were marital property because a reasonable inference could be made that those appliances were used regularly for the common benefit of the parties during the marriage. The record indicates that the husband removed joint property that totaled $900 from the farm when the parties
separated. Therefore, the husband was awarded marital property totaling $1,900.
The record indicates that the parties’ earning capacities were similar, in light of the husband’s disability, and, as we stated above, the parties agreed that misconduct of the parties was not a factor for the trial court to consider. Even considering the fact that the parties contributed funds toward the husband’s rental house from their joint account, without any evidence of the amounts contributed we cannot conclude that those contributions balanced out the husband’s interest in the farm, especially considering the indication in the record that the husband was the primary contributor to the parties’ joint account. Furthermore, to the extent that the record indicates that the husband removed approximately $16,851 from a savings account when the parties separated, the record indicates that the source of the funds the husband removed were primarily attributable to a lump-sum Social Security disability payment and a payment for unused leave time that he had received shortly before the parties separated. Therefore, we cannot conclude that the husband’s actions justified the disproportionate award of property to the wife.
Considering the undisputed fact that the husband used $22,000 in proceeds from the sale of his residence to contribute to the construction of the house at the farm, as well as evidence indicating that he had made additional financial contributions totaling approximately $40,600 from his separate bank account toward the construction of that house, we must conclude that the divorce judgment, insofar as it fails to award the husband any interest in the farm, is inequitable. See Kaufman v. Kaufman, 934 So.2d at 1080-81 (reversing *764 a division of property that disproportionately favored one spouse after the trial court improperly determined that certain assets were not marital property). Accordingly, the trial court’s judgment dividing the parties’ marital property is reversed, and the cause is remanded with instructions to the trial court to enter a judgment fashioning an equitable division of property in light of this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J, and PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The husband alleges that, during the ore tenus hearing, the parties and the trial-court judge had an off-the-record discussion and, during that time, the trial-court judge instructed the parties’ attorneys to "submit the case in writing for a final decision.” This instruction from the trial-court judge does not appear in the record on appeal. The record on appeal cannot be altered or varied by statements in appellate briefs, and this court is limited to a review of the record alone. See Hail v. Regency Terrace Owners Ass’n, 782 So.2d 1271, 1277 (Ala.1999).

. We note that the record indicates that the wife’s two siblings each sold their seven acres of property to the husband and the wife in early September 2006 and that the wife's mother conveyed the third seven-acre parcel that completed the farm to the husband and the wife in early October 2006.

. In her summary testimony, the wife stated that $66,216.50 remained from the $91,500 mortgage after she paid off the loan on her vehicle, a difference of $25,283.50. Other parts of the record indicate that the wife paid approximately $20,000 in order to pay off the loan on her vehicle.

. The record indicates that the wife presented two exhibits during trial regarding the amount of joint funds expended on the husband’s rental house; however, those exhibits were never admitted into evidence. The trial court stated on the record that the wife’s exhibits regarding funds used for the husband's rental house were "merely advisory and not to be taken as proof of the matters asserted.” One exhibit is not included in the record on appeal, and the other indicates that the parties spent approximately $3,400 from their joint account on the husband's rental property.

. We note that, in our opinion on original submission, we held that the ore tenus standard of review did not apply in this particular case because the trial court had heard only direct testimony from the wife, with no cross-examination, and the remainder of the evidence presented by the parties was submitted to the trial court in writing. See Paulk v. Paulk, 97 So.3d at 757.

. A reasonable inference could be made from the evidence in the record that the wife would have inherited that property upon her mother's death; however, it is clear from the record that the wife's mother was still alive at the time of trial.

. We note, however, that the parties did pay the wife’s mother $15,000 for the structures on the property that was conveyed to the husband and the wife from the wife's mother.

.We acknowledge that there was evidence indicating that the mortgage debt had been reduced by $30,000 at the time of trial; however, the record indicates that approximately $9,000 was paid on the mortgage from the parties’ joint account and that approximately $25,000 from the mortgage proceeds was *763 used to pay the wife’s automobile loan. Therefore, the remaining mortgage debt, i.e., $61,500, was only about $5,000 less than the amount of money that was actually used to purchase and improve the farm.